**TA LEGAL GROUP PLLC**
Taimur Alamgir (TA 9007)
315 Main Street, Second Floor
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
*Attorneys for Plaintiff Siavash Bahreini and Class Members*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
SIAVASH BAHREINI, *on behalf of himself*
*and others similarly situated*,

                   **Case No:**

        Plaintiff,

           - against –          **CLASS ACTION**
                              **COMPLAINT**

NATIONAL BOARD FOR CERTIFIED      **Jury Trial Demanded**
COUNSELORS, INC and CENTER FOR
CREDENTIALING & EDUCATION, INC.

          Defendants.
------------------------------------------------------------X

       Plaintiff Siavash Bahreini ("Plaintiff"), on behalf of himself and others similarly situated, by and through his counsel, TA Legal Group PLLC, hereby files this Complaint against Defendants, National Board for Certified Counselors, Inc. ("NBCC"), and Center for Credentialing & Education, Inc. ("CCE" and, with NBCC, "Defendants") and alleges as follows:

**<u>INTRODUCTION</u>**

    1.    Plaintiff is a mental health counselor who is visually-impaired and legally blind. Due to his blindness, Plaintiff must rely on screen reader programs to access websites.

    2.    Plaintiff brings this lawsuit to hold Defendants to account for subjecting him and

1

others similarly situated to egregious disability discrimination, and seeks class-wide injunctive and monetary relief to remedy the effects of same.

3.      Defendants operate a credentialing and licensing agency for professional counselors.

4.      Pursuant to a contract between Defendants and the New York State Department of Education, Office of the Profession ("NYSED OP"), Defendants issue and administer the National Clinical Mental Health Counseling Exam ("NCMHCE"), a legal prerequisite to licensure as a mental health counselor in New York.

5.      Plaintiff aspires to practice as a mental health counselor in New York and is thus seeking to obtain licensure as a Licensed Mental Health Counselor ("LMHC"). To become credentialed as an LMHC in New York, Plaintiff is required to take and pass the NCMHCE.

6.      LMHC candidates such as Plaintiff seeking to register for the NCMHCE are directed to do so through Defendants' website, https://my.cce-global.org/ProfileHome.aspx, (the "Website").

7.      However, because Defendants failed to construct or operate the Website to be fully accessible to, or even usable by Plaintiff or other similarly situated individuals in the proposed Class who are legally blind., Plaintiff was and is unable to register for the NCMHCE, or even access the Website.

8.      Despite numerous further attempts thereafter using multiple devices and screen readers, Plaintiff has been prevented from registering for the NCMHCE for months.

9.      Worse, when Plaintiff contacted Defendants to complain of the accessibility issues he was facing, Defendant refused to help Plaintiff.  Instead, Defendants cruelly mocked Plaintiff's

blindness and belittled Plaintiff, and then callously ignored Plaintiff's follow-up calls for weeks on end.

10.     Defendant falsely represented (in an email that came after weeks of disregarding Plaintiff's communications) that the website was compatible with a screen reader.

11.     However, Defendants' website was never fixed and remains riddled with accessibility issues. The same issues continue to impede Plaintiff's efforts to complete NCMHCE registration through the Website. As such, Plaintiff still has not been able to take the NCMHCE.

12.     Due to Defendants' discriminatory and retaliatory acts, Plaintiff has suffered violations of federal and state public accommodations laws. Plaintiff asserts those claims on a class-wide basis on behalf of all similarly situated individuals.

13.      Plaintiff also seeks recovery, on an individual basis as he was deprived of an LMHC license and employment opportunities as an LMHC in the state of New York. Specifically, Plaintiff seeks redress for the denial of rights, professional harm and humiliation that he has suffered due to Defendants' illegal conduct.

## CLAIMS

14.     Plaintiff, on behalf of himself and others similarly situated, asserts claims against Defendants pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 *et seq.*, because Defendants' website, a "public accommodation" within the meaning of the aforesaid statutes, is not equally accessible to Plaintiff or other similarly situated blind and visually-impaired consumers. As discussed below, Plaintiff experienced accessibility barriers on each of his visits to the website and barriers continue to exist as of the date of the filing of this Complaint.

15.    Plaintiff further asserts an individual claim against Defendants pursuant to Section 504 of the Rehabilitation Act of 1973 on the basis of disability-based discrimination and retaliation, in view of Defendants' discriminatory denial of opportunities to Plaintiff (1) to participate in or benefit from a federally funded program and (2) with regard to employment opportunities, including hiring, promotion, training, and fringe benefits, for which Plaintiff is otherwise entitled, and (3) in view of Defendants' unlawful retaliation against Plaintiff for engaging in protected activity, including the effective denial of his New York state mental health counselor license.

16.    Plaintiff further asserts individual claims against Defendants pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL") and the NYCHRL, because Defendant, as a licensing agency as defined in the aforementioned statutes, (1) subjected Plaintiff to unlawful discrimination and harassment based on Plaintiff's actual and/or perceived disability status, (2) unlawfully failed to accommodate Plaintiff's disability, (3) retaliated against Plaintiff for engaging in protected activity, (4) unlawfully caused Plaintiff to be denied a New York state mental health license due to discriminatory and retaliatory animus.

17.    Plaintiff further asserts individual claims against Defendant pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL") and the NYCHRL, because Defendants, an employment agency and/or labor organization as defined in the aforementioned statutes,  (1) subjected Plaintiff to unlawful discrimination and harassment based on Plaintiff's actual and/or perceived disability status, (2) unlawfully failed to accommodate Plaintiff's disability, (3) retaliated against Plaintiff for engaging in protected activity, (4) denied Plaintiff employment opportunities as a New York state mental health counselor due to unlawful discriminatory and retaliatory animus.

18.     Plaintiff seeks injunctive relief (including a preliminary and permanent injunction), and declaratory relief available under 28 U.S.C. §§ 2201 and 2202, directing Defendants to remediate the accessibility barriers as set forth hereinbelow.

19.     Plaintiff further seeks monetary damages, including actual and compensatory damages, emotional distress damages, statutory damages, punitive damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and expenses, as set forth hereinbelow.

## JURISDICTION, VENUE AND PRE-CONDITIONS TO SUIT

20.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

21.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's NYSHRL and NYCHRL claims.

22.     Defendant is subject to personal jurisdiction in this District because it conducts a significant volume of business in New York State and because Plaintiff was harmed by Defendants website in this District. Defendants committed a substantial part of the acts or omissions that caused injury to Plaintiff in this District.

23.     All pre-conditions to this suit have been satisfied or waived.

## PARTIES

**Plaintiff**

24.     Plaintiff is a resident of Hudson County, New Jersey.

25.     As a blind, visually- impaired, handicapped person, Plaintiff is a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

26.     As a blind, visually- impaired, handicapped person, Plaintiff is a member of a

protected class of individuals as defined under under the NYCHRL.

27.     Plaintiff holds an Masters in Mental Health Counseling from Montclair State University.

28.     Since being certified in 2018 by the state of New Jersey as a Licensed Professional Counselor ("LPC") – the New Jersey equivalent of the New York LMHC credential, Plaintiff has worked as a mental health counselor in New Jersey.

29.     Since 2022, Plaintiff has been employed as a mental health counselor by Harmony Wellness Centers ("Harmony"), a multi-state provider of counseling and behavioral services.

30.     Plaintiff's mental health counseling practice is increasingly specialized towards serving members of the LGBT community, which currently represents 50% of his clientele. Specialization in LGBT-focused counseling is uncommon as it requires familiarity with and sensitivity to LGBT-specific issues – *i.e.*, LGBT family dynamics, employment discrimination, and pronoun use.

**<u>Defendants</u>**

31.     Defendants NBCC and CCE are both not-for-profit corporations organized under the laws of the state of North Carolina. Defendant NBCC is the parent corporation of Defendant CCE. Defendants share a corporate headquarters located at 3 Terrace Way, Greensboro, NC 27403.

32.     Defendants are recipients of more than $50,000,000 in federal grant funding, which is used to finance the operation of the programs at issues here.

33.     Defendants were at all times relevant doing business in this jurisdiction.

    a.  Defendants contract with New York state to issue and administer the NCMHCE.

b.   NYSED OP's website specifically directs LMHC candidates that "To meet the examination requirement for licensure as a Mental Health Counselor in New York State, you must pass the [NMCHE], administered by the National Board for Certified Counselors (NBCC)." Likewise, Defendant NBCC's website includes New York-specific guidance on its website that directs LMHC candidates to obtain pre-approval from the NYSED OP to take the NCMHCE.

c.   Defendants administer the NCMHCE to more than 1,000 individuals seeking certification as LMHCs annually, each of whom must pay a $275 examination fee.

d.   Defendants contract with Pearson Education Inc. for the use of 16 testing locations within New York for purposes of administering the NCMHCE in-person at said locations throughout the year.

## STATEMENT OF FACTS

### Plaintiff's Use of Screen Reader Programs

34.    In 2017, the Centers for Disease Control ("CDC") estimated that the blind population in the United States reached approximately 1.7 million.

35.    The American Foundation for the Blind's website states that the 2019 American Community Survey (conducted by the U.S. Census Bureau) identified an estimated 388,524 New Yorkers with vision difficulty.

36.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons

alike.

37.     According to Pew Research, in 2021, three out of ten American adults are almost constantly online, up from approximately two in ten in 2015.  Per a study by the MIT Technology Review published in 2018, the average American spends 23.6 hours of every week online.  According to studies cited by CNBC, as of 2018, Americans spent 234 million hours shopping online during the average workday.

38.     Blind and visually-impaired people like Plaintiff have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the internet.

39.     Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information and goods contained thereon. For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

40.     Non-compliant websites usually contain numerous common access barriers that prevent the blind and visually-impaired from enjoying the Internet in the same way sighted individuals do.

41.     The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the

Web Content Accessibility Guidelines ("WCAG"). WCAG 2.1 is a set of well-established guidelines promulgated to ensure that websites are accessible to blind and visually-impaired people.

42.     At all relevant times, Plaintiff has accessed the internet using two devices – a computer featuring the Windows operating system, and an Apple iPhone and iPad each featuring the Mac iOS operating system.

43.     At all relevant times, Plaintiff has two popular screen reading programs to enable him to access the Internet on his Windows computer, Job Access With Speech, otherwise known as "JAWS", and NonVisual Desktop Access, otherwise known as "NVDA."

44.     At all relevant times, Plaintiff has used Apple's VoiceOver screen reader to enable him to access the Internet from his iPhone and iPad.

**Plaintiff's Desire to Obtain Licensure As Mental Health Counselor In New York**

45.     In late March 2024, Plaintiff decided to pursue licensure in New York as a mental health counselor.

46.     Plaintiff's intention to become licensed as a mental health counselor in New York is motivated by the prospect of a substantial boost to his income and career prospects.

47.     In 2024, Harmony, Plaintiff's employer, announced that it intended to expand into New York. Plaintiff's employer has requested that Plaintiff obtain the LMHC credential in order to take clients on in New York, particularly in New York City. Harmony also urged Plaintiff to obtain licensure in New York as this would enable him to waive into other states that have adopted the NCMHCE without having to repeat the examination.

48.     Licensure in New York offers Plaintiff opportunities to expand his clientele significantly, particularly given Plaintiff's specialization in counseling LGBT individuals.

Because New York State (and especially New York City) have large LGBT communities, it is likely that Plaintiff's services as an LGBT specialist would be in high demand.

49.    Plaintiff has repeatedly been forced to turn down potential referrals for telehealth appointments upon learning that the patients are physically located in New York.

50.    Based on Plaintiff's belief that he would be able to register to take the NCMHCE and thereafter would obtain his LMHC credential, Plaintiff advised Harmony that he intended to take the examination.

**Due To The Website's Inaccessibility, Plaintiff Is Unable to Register For NCMBCE**

51.    NYSED OP's website lists the requirements for licensure as an LMHC as follows:

- be of good moral character.
- be at least 21 years of age;
- meet education requirements;
- meet experience requirements;
- meet examination requirements; and
- complete coursework or training in the identification and reporting of child abuse offered by a New York State approved provider…

Plaintiff satisfies, or can easily complete, each aforesaid requirement, except for the examination requirement, because

52.    Plaintiff paid NYSED OP the $371 fee to obtain the required approval to take the NCMHCE.

**Defendants' Refusal To Accommodate Plaintiff And Discriminatory Conduct**

53.    Plaintiff has been unable to register for the NMCBCE, despite numerous attempts between April 5 and the present using multiple devices and screen readers.

54.    Although the Website contains a purported accessibility statement, Plaintiff was prevented from registering for the NMCBCE due to the Website's accessibility barriers, including

the following:

    a.   The drop-down menu that appears when one taps the "Applications" button, which allows for selection of specific examinations, is not accessible via a screen reader. Because Plaintiff was unable to access this critical menu using the screen reader, he was unable to select the appropriate examination and thereby proceed with his application.

    b.   Links on the Profile Page do not have file names discernible from one another. Therefore, Plaintiff is unable to distinguish them from one another.

55.     On April 5, 2024, Plaintiff attempted to register for the NMCHCE through the Website 4 times; using on his Windows computer using JAWS, his Windows computer using NVDA, on his iPhone using VoiceOver, and finally on his iPad using VoiceOver.

56.     All of these attempts at registration were unsuccessful due to the access barriers described above.

57.     On April 5, 2024, at approximately 4pm, following his initial attempts to register for the NMCHCE, Plaintiff called Defendants

58.     Upon being connected to a representative of Defendants. Plaintiff informed the representative that he was blind and used a screen reader to access websites.

59.     Plaintiff further explained to the representative that he was attempting to register for the NMCHCE in order to obtain a license to work as a mental health counselor in New York, but was unable to register for the examination because the Website contained access barriers.

60.     The representative insisted that that there was no problem with the Website.

61.     Even though Plaintiff explained to the representative that he was blind and could only access the Website to the extent it was accessible to the screen reader, the representative

11

appeared not to care, claiming repeatedly that the Website was fine and that Plaintiff must be "doing something wrong."

62.     The representative told Plaintiff that she did not know what to do and did not understand what the problem was, and transferred Plaintiff to a supervisor.

63.     Plaintiff repeated to the supervisor that he was blind, and unable to register for the NCMHCE using the Website because of the accessibility issues discussed above.

64.      Plaintiff requested that, in view of the circumstances, Defendants provide an accommodation.

65.     The supervisor openly rejected Plaintiff's request for an accommodation for his disability.

66.     Responding to this refusal to reasonably accommodate Plaintiff, Plaintiff invoked his legal rights, stating "I do have rights under the ADA and… there is a responsibility to make some accommodation."

67.     The supervisor did not respond to this protected complaint. Instead, seeking to ridicule Plaintiff's blindness and downplay his complaints of an ADA violation, the supervisor said that she has a family member who is blind,

68.     Plaintiff replied that he did not feel that it was inappropriate that the supervisor was raising this personal anecdote, particularly while refusing to do anything to assist Plaintiff with the accessibility issues of which he complained.

69.     Remarkably, the supervisor stated rudely that she was being "empathetic" in raising her alleged blind family member.

70.     The supervisor then berated Plaintiff for failing to show appropriate empathy to *her*.

12

71.    The supervisor continued to address Plaintiff in an insulting and disrespectful tone, repeatedly cutting him off.

72.    Despite promising to take Plaintiff's contact information, the supervisor hung up on Plaintiff without doing so.

73.    After the supervisor hung up on the April 5, 2024 call, Plaintiff attempted to call Defendants back immediately on the same number. However, despite the urgency of the issue, and even though Defendants had not even collected Plaintiff's contact information, no one answered the call.

74.    Plaintiff memorialized the contents of the April 5, 2024 phone conversation in an email to Defendant CCE sent later on April 5, 2024, which recounted his above-described interactions with the representative and supervisor, and further stated:

> I believe this is unacceptable behavior. I simply want to register for the NY state exam to become licensed as a clinician. I have no problem following the rules. However, I do not want to be dismissed, put down, or given any statement that takes away from my professional need
>
> I hope that some solution can be reached as my need to register and pay for the NY state exam has not been met. I welcome any response to focus on that specific need. Please feel free to calling me at [cellphone number] or emailing me back. If there is a phone call, I am available between 7:00am and 12:30pm Monday-Thursday.

75.    Defendants never responded to the aforesaid concerns.

76.    Plaintiff repeatedly called Defendants on the same number during the following week. However, Defendants did not answer Plaintiff' repeated calls or the voicemails that he left.

77.    Plaintiff attempted to call Defendants on a different number subsequently. However, the individual who picked up the alternative number refused to address Plaintiff's complaint once Plaintiff identified himself, instead telling Plaintiff that someone would get back to

him and hanging up.

78.     On April 11, 2024, Plaintiff emailed Defendants again, as follows:

> *I am blind. Unfortunately, I cannot use the my.cce-global.org website to register for the NY State Exam to become LMHC. I use a screen reader to navigate through websites. When clicking on Applications, nothing happens. If there is a visual change, I would not be able to see it.*
>
> *I simply need assistance in registering for the exam. Please get back to me either through e-mail or call me at [cellphone number]*

79.     Despite this follow-up correspondence, Defendants failed to respond or otherwise communicate with Plaintiff until April 24, 2024.

80.     On April 24, 2024, Plaintiff received an email from Shonette Rangel, who identified herself as an official of Defendant CCE

> *My understanding is that you encountered an issue when attempting to complete the online application utilizing a screen reader software.*
>
> *I was able to confirm with our IT team that the website is compatible with JAWS screen reader software.*

81.     Thereafter, later on April 24, 2024, following the receipt of the above-quoted correspondence, Plaintiff again attempted to register for the NCMHCE on his Windows computer using JAWS, on his Windows computer using NVDA, on his iPhone using VoiceOver, and on his iPad using VoiceOver. All attempts, including the attempt with JAWS, were unsuccessful.

82.     Defendants' claim that the Website was compatible with JAWS was false.

83.     Plaintiff remained unable to proceed with the NCMHCE registration due to the same access barriers described above.

84.     Defendants have not made any further efforts to address Plaintiff's concerns.

85.     It is evident from Defendants' improper conduct, delay and false statements that Defendants have no intention to follow the law, remedy the violation, or engage in any kind of

legitimate interactive process.

86.    On June 30, 2024: while located at 620 West 42nd Street, Apt. 47L, New York, NY, Plaintiff attempted to register for the NCMHCE on his iPhone using VoiceOver. Yet again, Plaintiff was prevented from doing so due to the same access barriers.

87.    To this day, Plaintiff remains unable to register for the NCMHCE.

## CLASS AND INJUNCTIVE/DECLARATORY RELIEF ALLEGATIONS

88.    Plaintiff brings this action as a nationwide class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), both individually and on behalf of the Class currently defined as: all visually-impaired or legally blind individuals in the United States who have attempted to access Defendants' website and have been denied access thereto during the Class Period during the last 4 years.

89.    Plaintiff also seeks certification of a sub-class of all visually-impaired and/or legally blind individuals in the City of New York who have attempted to access Defendant's Website and have been denied access to the Website during the last three years.

90.    Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

91.    Upon information and belief, there are hundreds of members in the Class who have suffered from Defendants' conduct complained of herein during the Class Period. Accordingly, joinder is impracticable pursuant to Fed. R. Civ. P. Rule 23(a)(1).

92.    Common issues of fact or law predominate over individual issues within the meaning of Fed. R. Civ. P. Rule 23(a)(2). Common issues of law and fact include, but are not limited to, whether:

    a.   the website is a place of "public accommodation" under the ADA;

    b.   the website is a "place or provider of public accommodation" under the NYCHRL; and

    c.   the website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA and/or NYCHRL;

93.    Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class and the claims arising out of Defendant's common uniform course of conduct are all based upon the same facts and legal theories.

94.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent counsel experienced with class actions and civil rights litigation who intend to vigorously prosecute this action. Plaintiff has similar legal bases for statutory and punitive damages that are sought on the behalf of members of the Class in this action. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

95.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the court system and could create the possibility of inconsistent judgments. Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

96.    Class members' identities can be identified by Defendant's records. Plaintiff

reserves the right to amend the definition of the Class at any point of the litigation, especially after being provided the opportunity to review the documents and records produced in discovery.

97.    It is Defendants' policy and practice to deny Plaintiff and the Class access to its website and to specifically deny the goods offered to the general public. Due to Defendants' failure and refusal to remove access barriers to the Website, Plaintiff and the Class have been—and currently are—denied equal access to the website and the goods offered thereon.

98.    As described above, during Plaintiff's repeated visits to Defendant's website, Plaintiff encountered the access barriers set forth above that denied Plaintiff full and equal access to Defendant's website and the items sold there. These access barriers were the reason that Plaintiff was repeatedly denied the opportunity to register for the NCMHCE.

99.    Plaintiff remains expectant that the accessibility barriers will be cured expeditiously, as Plaintiff unequivocally intends to return to the website to register for the NCMHCE. As the Website is available through the Internet, Plaintiff may easily return to the website and purchase the pork rind crumbs once the barriers to accessibility are removed.

100.    The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access on multiple occasions in the past, and now deter Plaintiff from visiting the website until such barriers are cured—presently and in the future.  These access barriers have, on four separate occasions, deterred, and continue to deter, Plaintiff from using the Website and/or registering for the NCMHCE.

101.    If the website were equally accessible to all, Plaintiff and the Class could independently navigate the website and complete a desired transaction as sighted individuals do.

102.    Plaintiff has actual knowledge of the access barriers that make Defendants' Website inaccessible and independently unusable by blind and visually-impaired people based on

repeated attempts to register for the NCMHCE using same.  Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and the Class equal access to the website, Plaintiff alleges that Defendants have engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

    a.   constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff and the Class;

    b.   failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff and the Class; and

    c.   failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers (a protected class), including Plaintiff and the Class.

103.    Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein. Since Defendants' website is not equally accessible—and because Defendants lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible—they must take measures to ensure future compliance.

104.    Plaintiff engaged TA Legal Group PLLC to represent him and the Class in this matter and have agreed to pay them a reasonable fee for their services.

## CAUSES OF ACTION

### I.    Violation of Title III of the Americans with Disabilities Act (ADA) - Class Action

105.    Plaintiff, on behalf of himself and others similarly situated, asserts that Defendants' website constitutes a "public accommodation" under Title III of the ADA. Despite

this classification, Defendants have failed to ensure equal accessibility for blind and visually-impaired individuals. Plaintiff and the class encountered accessibility barriers during visits to the website, which persist as of the filing of this Complaint.

II.    **Violation of New York City Human Rights Law (NYCHRL) - Subclass Allegation**

106.    Plaintiff, on behalf of a subclass consisting of individuals within New York City, asserts claims under the NYCHRL against Defendants. Defendants' website, classified as a "public accommodation" under the NYCHRL, fails to provide equal accessibility for blind and visually-impaired consumers within New York City. Plaintiff and the subclass encountered accessibility barriers on the website, which continue to exist as of the date of this Complaint.

III.    **Violation of Section 504 of the Rehabilitation Act of 1973**

107.    Plaintiff alleges disability-based discrimination and retaliation under Section 504 of the Rehabilitation Act. Defendants, through their actions, have denied Plaintiff opportunities to participate in or benefit from federally funded programs. Additionally, Defendants engaged in discriminatory and retaliatory conduct related to Plaintiff's employment opportunities, including hiring, promotion, training, and fringe benefits. This includes retaliatory actions affecting Plaintiff's ability to obtain New York state mental health counselor license.

IV.    **Violation of NYSHRL and NYCHRL - Claims Against Licensing Agency**

108.    Plaintiff asserts claims against Defendants under the NYSHRL and NYCHRL, treating them as a licensing agency. Defendants have allegedly engaged in unlawful discrimination, harassment, and failure to accommodate Plaintiff's disability. Furthermore, Defendants retaliated against Plaintiff for protected activities, resulting in the denial of Plaintiff's New York state mental health license.

V.  **Violation of NYSHRL and NYCHRL - Claims Against Employment Agency/Labor Organization**

109.    Plaintiff asserts separate claims under the NYSHRL and NYCHRL against Defendants, considered as an employment agency and/or labor organization. Defendants are accused of unlawful discrimination and harassment based on disability status, failure to accommodate Plaintiff's disability, and retaliatory actions against Plaintiff for engaging in protected activity. Plaintiff was allegedly denied employment opportunities as a New York state mental health counselor due to discriminatory and retaliatory motives.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a judgment:

(a)    awarding Plaintiff statutory money damages, actual damages, compensatory damages, including financial losses directly caused by the denial of services and opportunities due to Defendants' discrimination, emotional distress damages, compensating Plaintiff for emotional harm, including humiliation, embarrassment, and reputational damage suffered as a result of Defendants' discriminatory actions, punitive damages, to punish Defendants for willful or reckless conduct and to deter future similar misconduct, and pre and post judgment interest, to compensate Plaintiff for the time value of money from the date of harm until the judgment and thereafter until full payment.

(b)    granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully comply with the requirements set forth in the ADA and NYCHRL, and make their website accessible to blind and visually-impaired individuals and to cease all discriminatory practices immediately.;

(c)    providing a declaration that Defendant owns, maintains and/or operates

its website in a manner that discriminates against the blind and visually-impaired;

(d)    certifying the Class and the NYC Sub-Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as class representative, and Plaintiff's attorneys as class counsel;

(e)    awarding attorney's fees incurred in pursuing this action, as allowed by law, due to Defendants' unlawful conduct, and litigation expenses, including costs associated with expert witnesses, court fees, and other expenses necessary for the prosecution of this case.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:    Huntington, NY
          July 17, 2024

       **TA LEGAL GROUP PLLC**
       *Attorneys for Plaintiff Siavash Bahreini and Class Members*

By:   _____
       Taimur Alamgir
       315 Main Street, Second Floor
       Huntington, NY 11743
       Tel. (914) 552-2669
       tim@talegalgroup.com